STATE v. ADAMS et al.

No. 28761.   June 18, 1940.

Rehearing Denied Sept. 17, 1940.

*105 P. 2d 416.*

Mac Q. Williamson, Atty. Gen., Houston W. Reeves, Asst. Atty. Gen., and Claude Weaver; Jr., of Oklahoma City, for plaintiff in error.

Thos. G. Andrews, Andrews & Andrews, and James D. Fellers, all of Oklahoma City, for defendants in error.

HURST, J. Plaintiffs, Lewis Adams and Amelia A. Adams, brought this action against the state, pursuant to authority of article 4, ch. 65, S. L. 1935, for damages to land occasioned by the overflow of surface water due to the construction of a highway across a portion thereof. The trial court overruled defendant's demurrer to plaintiffs' petition, demurrer to plaintiffs' evidence, and motion for a directed verdict, and submitted the case to a jury, which found for plaintiffs. Defendant's motion for judgment non obstante veredicto and motion for new trial were denied, and judgment was rendered on the verdict. Defendant appeals.

The material facts from which the controversy arose are as follows: Plaintiffs were the owners of 80 acres of land in Lincoln county. In the spring of 1928, by two instruments in writing, they conveyed to defendant a perpetual easement for highway purposes over the northwest portion of their land, upon which strip defendant constructed a paved road. The total consideration for the two easements was $77, and the instruments recited that they included "all damages and building of fences." Prior to the construction of this paved highway a state road had been maintained

north of and adjoining plaintiffs' premises. Plaintiffs' evidence tended to prove that while the old road was in existence the surface water on lands north of such road was conducted by certain ditches under a wooden bridge which was a part of the old road, and thence to a larger ditch on the west line of their property, and that this arrangement adequately protected their land from overflow and damage; that when the paved highway was constructed the provision made to care for such surface waters proved inadequate, and some 25 acres of their land was rendered practically worthless by the depositing thereon of sand carried by such overflow waters. This evidence was to some extent contradicted by witnesses for the defendant. Plaintiffs brought an action for the damages against the State Highway Commission, and after an adverse decision by this court in that case (State Highway Commission v. Adams [1936] 178 Okla. 270, 62 P. 2d 1013), commenced this action under authority granted by the above-cited statute.

1. Defendant's first contention is that the consideration paid by it for the two easements is presumed to have been full payment for all damages to the remainder of the land, and therefore it is not liable to plaintiffs. It relies on Poston v. City of McAlester (1928) 132 Okla. 4, 268 P. .1110, and cases from other states holding that such consideration is presumed to cover all the damages to which the landowner would have been entitled in case that portion of his land embraced in the easement was taken by a regular condemnation proceeding. We consider that a correct statement of law. But in condemnation proceedings, only such damages will be awarded as may be reasonably anticipated to result from the use of the portion taken for the purposes for which it is condemned. The constitutional provision (section 24, article 2) cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner of the land taken or damaged, confined to that tract, occasioned by the taking of his land. Lewis Eminent Domain (3d Ed.) sec. 686. In section 714 of the same work the author says:

"Damages are to be assessed on the basis that the works will be constructed and operated in a skillful and proper manner. Thus in case of railroads it must be assumed that they will construct necessary and proper culverts, and that, in bridging streams, they will make waterways of sufficient capacity and so place the piers and abutments as not to do any unnecessary injury to the adjacent lands. All damages resulting from neglect in construction or from negligence in the use of the property or works may be recovered by appropriate actions by the parties damnified when such damages occur, and nothing should be allowed on the theory that such negligences may happen."

The anticipated damage where part of a tract is condemned must be such as is "reasonably incident to the construction or operation of the work to be considered in awarding compensation, and if there is nothing in the matter of economy or safety which seems to require an extensive change in natural conditions, such as the diversion of a stream, damages for possible injury on that account will not be awarded." 18 Am. Jur. 905; 10 R. C. L. 152. This general rule has been followed by this court. Oklahoma Gas & Electric Co. v. Miller Bros. 101 Ranch Trust (1935) 173 Okla. 101, 46 P. 2d 570; Sweeney v. Dierstein (1935) 170 Okla. 566, 41 P. 2d 673. See, also, Illinois Power & Light Corporation v. Peterson (Ill. 1926) 153 N. E. 577, 49 A. L. R. 692, and note VI; Lewis and Clark County v. Nett (Mont. 1928) 263 P. 418.

The authorities cited by defendant do not, in our opinion, conflict with the general rule above announced. In fact, defendant relies on the rule stated in 20 C. J. 1068, to the effect that the owner must recover in one action "all damages which have resulted, or are reasonably liable to result in the future, from a proper construction or operation of the improvement, and that no subsequent action will lie to recover for items which were or might have been considered in the original proceeding."

The injustice of a contrary rule is readily apparent. It would result, in many instances, in the condemnor being required to recompense the landowner for injuries he might never sustain, or in the landowner suffering injuries to his property without hope of redress, depending upon the views of the commissioners, or the jury on appeal, as to the probable nature and extent of damages remote and speculative, and incapable of ascertainment prior to the actual construction of the work. In the present case the land of plaintiffs had been adequately protected by the plan of construction of the old highway. They had no reason to expect a different result from the construction of the new. If, in a condemnation proceeding, an award for the value of 25 acres of their remaining land had been made, based on the remote possibility that the construction of the new road might damage plaintiffs' land to that extent, no court would have sustained such an award. We hold that the damage sued for in this action was not such as would be awarded had the right of way been condemned, 'and was not covered by the price paid for the easements. Also, such consequential damage comes within the purview of section 24, art. 2, of the Constitution. Oklahoma City v. Collins-Dietz-Morris (1938) 183 Okla. 264, 79 P. 2d 791; State v. Fletcher (1934) 168 Okla. 538, 34 P. 2d 595; Page v. Oklahoma City (1928) 129 Okla. 28, 263 P. 448. In Stedman v. State Highway Commission (1935) 174 Okla. 308, 50 P. 2d 657 (overruled on other grounds in State Highway Commission v. Brixey [1936] 178 Okla. 118, 61 P. 2d 1114) this court held that the right to recover for consequential damages resulting from the construction of a highway was conferred by the above section of the Constitution, citing and analyzing many authorities from this and other states. In State Highway Commission v. Brixey, supra, this court, while recognizing and assenting to the right to recover such damages, held that such an action was a suit against the state, and could not be maintained without the state's consent, overruling Stedman v. State Highway Commission on this point. We therefore hold that the action was maintainable under section 24, art. 2, of the Constitution, and the permissive act above referred to.

2. For its second ground for reversal, defendant urges that the state is not liable for the negligence of its officers and agents in the construction and operation of its highways, citing Jack v. State (1937) 183 Okla. 375, 82 P. 2d 1033, and other cases so holding. But we think this assertion is based upon a misconception of the cause of action alleged by plaintiffs. Plaintiffs in this case base their claim, not on any negligence or wrongdoing of any officer or agent of the state, but on consequential damages resulting from the construction of the highway in accordance with the plans of the Highway Department, consisting of an additional damage to plaintiffs which was not to be reasonably anticipated or foreseen. The action is predicated upon a right given by the Constitution. State v. Fletcher, supra. The negligence of the officers and agents of the state is not the basis of the plaintiffs' claim. The constitutional mandate (sec. 24, art. 2) that "private property shall not be taken or damaged for public use without just compensation" is not restricted to nonnegligent injuries. It imposes a liability when private property is damaged for public use, negligence or no negligence. Oklahoma City v. Collins-Dietz-Morris Co., supra.

3. In its third, fourth, and fifth contentions, defendant asserts that the state may not be sued except pursuant to consent granted by express legislative enactment, and that the act under which this action is brought is void as violative of constitutional provisions, and therefore is not such consent.

(a) In State v. Fletcher, supra, and in Ward v. State (1936) 176 Okla. 368, 56 P. 2d 136, this court approved the waiver of immunity from suit by joint resolution of the Legislature. That the Legislature may waive such immunity, where not prohibited by the Constitution, is

well settled. 59 C. J. 302. As said in Carter v. State (La. Ann. 1897) 22 So. 400, the authority granted to assert a right is not a special right, privilege, or immunity which is in derogation of the common right. In the present case the plaintiffs had suffered a damage for which, by the constitutional provision, they were entitled to compensation. The waiver of immunity in order that they might assert that right was not violative of either section 46 or 59, art. 5, of the Constitution. In Jack v. State, supra, the act of the Legislature went further than to waive immunity, and attempted to create and vest in the plaintiff a cause of action for a liability which theretofore did not exist against the state by reason of its not being liable for the torts of its agents.

(b) The contention that the act was not advertised as required by section 32, art. 5, was not made until the hearing on the motion for a new trial, at which time the defendant offered to prove such fact. The only allegation with reference to the act in defendant's answer was that the act was special legislation, and therefore unconstitutional. No showing was made that the offered evidence was newly discovered, nor was the motion based on that ground. We know of no rule of procedure or evidence which would authorize the trial court to hear and consider such evidence at the time the offer was made, and none is suggested in the brief of defendant. The presumption is, in the absence of a showing to the contrary, that the act was advertised as required by section 32. Dunlap v. Board of Com'rs of Carter County (1922) 85 Okla. 295, 205 P. 1100. There was no error in rejecting the offer.

(c) The further contention that the act violated section 15, art. 10, of the Constitution is untenable. The credit of the state was not pledged, nor was any donation or gift made by it, by the passage of the act. Plaintiffs asserted an injury for which, if established, they were entitled to compensation, under section 24, art. 2, of the Constitution. The act simply waived immunity from suit for that purpose. There is nothing in Carter v. Thomas (1935) 172 Okla. 558, 46 P. 2d 460, or Hawks v. Bland (1932) 156 Okla. 48, 9 P. 2d 720, which supports such a construction of the act as is contended for by defendant.

4. The last contention made is that, since the act authorized a suit by Lewis Adams alone, and the present action was brought by Lewis Adams and Amelia A. Adams, his wife, it was not authorized, and the trial court was without jurisdiction to render judgment against defendant therein. This contention is made in this court for the first time. The parties plaintiff are husband and wife, and the land is their homestead. They were the grantors in the easements by which the right to construct the road across this land was acquired by the state, and while the state waived immunity as to Lewis Adams only, the joinder of the wife did not deprive the trial court of jurisdiction of the case as to Lewis Adams. If the wife is a necessary party (which fact we do not determine) we assume that the Legislature intended to waive immunity as to all necessary parties. We consider this contention without substantial merit.

Affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, and DAVISON, JJ., concur. RILEY and GIBSON, JJ., concur in conclusion. DANNER, J., dissents.

RILEY, J. (specially concurring). Some years ago the defendants in error sought and secured an award for compensation for damage to their lands occasioned by the public use as contemplated by section 24, art. 2, Constitution, providing:

"Private property shall not be taken or damaged for public use without just compensation."

And resort was had to the procedural statute, section 10094, O. S. 1931 (construed in the case of State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002, to be "a legislative enactment providing the manner in which

compensation for the taking or damaging of private property for public use by the State Highway Commission shall be ascertained." See State Highway Commission v. Brixey, 178 Okla. 118, 61 P. 2d 1114). But the award was reversed, State Highway Commission v. Adams, 178 Okla. 270, 62 P. 2d 1013, and I think erroneously so.

These landowners, whose property was so damaged, have secured permission by an act of the Legislature, art. 4, ch. 65, S. L. 1935, to institute an action in damages against the state, and so their rights in property have been finally protected, but it is well known that with construction of modern roads and highways great numbers of landowners have and will suffer damages directly caused by highway construction. It is utterly impossible that the Legislature, meeting only at intervals for limited sessions, can consider individual cases of this nature, and in proper cases grant permission that the state may be sued. If this be so, then, in order that justice be administered equally, it is imperative that this court revert to the rule stated in Steadman v. State Highway Commission, 174 Okla. 308, 50 P. 2d 657 (overruled in the Brixey Case); Sweeney v. Dierstein, 170 Okla. 566, 41 P. 673; and State Highway Commission v. Smith, 146 Okla. 244, 293 P. 1002, i.e., that section 11931, O. S. 1931, prescribing procedure to be followed for recovery of loss of property taken or damaged for state highway construction, gives consent of the state to the recovery by the landowner for such damage to land by resort to condemnation proceedings, and that these proceedings may be instituted by "either party."

In the event this court does not revert to that rule, the injustice can only be corrected by an additional legislative act.

I concur in the majority opinion under the view that justice though long delayed has been done in an isolated case and express the hope that the courts or the Legislature will act to extend the constitutional right to all people of the state equally and without favor.